**REEVES v. COLDWAY CARRIERS, Inc.**

Court of Appeals of Kentucky.

May 25, 1951.

A. E. Funk, Atty. Gen., Rudy Yessin, Asst. Atty. Gen., for appellant.

J. J. Leary, Frankfort, for appellee.

MOREMEN, Justice.

The facts in this case present a controversy between appellant, H. Clyde Reeves, Commissioner, Department of Revenue, and appellee, Coldway Carriers, Inc., a Kentucky corporation, concerning whether or not appellee's operation is subject to the gross weight tax provided for in KRS 281.480(1) (repealed 1950), which reads in part as follows: "On or before January 1 of each year, and as a condition precedent to the use of the public highways, every common carrier and every contract carrier primarily engaged in transporting property for hire, shall pay to the Division of Motor Transportation or its agent at Frankfort, for the privilege of using the highways, an annual excise tax, based on the declared gross weight * * *."

A petition was filed in the Franklin Circuit Court under the terms of the Declaratory Judgment Act, Civil Code of Practice, § 639a–1 et seq., which resulted in an adjudication in favor of appellee. Appellee contends that it is not subject to the tax because it is entitled to the benefits of a reciprocal agreement existing between the State of Indiana and the Commonwealth of Kentucky, written under the authority contained in KRS 281.580 (repealed 1950) which reads:

"*Reciprocal tax exemptions for nonresident carriers operating in interstate commerce.* (1) Under reciprocity agreements, any motor vehicle for the operation of which a certificate or permit is required under KRS Chapter 281, which is owned by a person or corporation having his or its principal place of business in another state or in the District of Columbia, which is registered and licensed in the state (or District) in which the owner has his or its principal place of business, and upon which the fees and excise taxes required by such state (or District) have been paid, shall, while operating into or through the Commonwealth of Kentucky in interstate commerce under a certificate or permit is-

sued by the Interstate Commerce Commission, be exempt from the registration fees under KRS Chapter 186 and the weight tax and excise taxes under KRS Chapter 281; provided that the state (or District) in which the owner has his or its principal place of business shall give like or similar privileges to owners of motor vehicles who have their principal place of business in Kentucky.

"(2) This section shall be administered by the Department of Revenue."

A decision in this case may be reached by determining whether or not Coldway Carriers, Inc. has its principal place of business in the State of Indiana.

Appellee was incorporated in the State of Kentucky on April 12, 1949. One of its incorporators, a Louisville lawyer, under the requirements of the Corporation Act, KRS 271.035, that an address be given, listed as the address of the corporation, his own office. The corporation was formed for the purpose of buying, selling, manufacturing and transporting general commodities with the specific purpose of transporting, under contract, dough products for the Ballard and Ballard Company of Louisville. On June 20, 1949, Interstate Commerce Commission granted to appellee authority to transport refrigerated dough from Louisville, Kentucky, to various points in 28 different states. On March 28, 1950, Interstate Commerce Commission granted to the appellee permanent authority to operate as a contract carrier in interstate commerce from Louisville, Kentucky, and Atlanta, Georgia, to points and places in 28 states and the District of Columbia.

Appellee started business on June 20, 1949, and, while officials of the company were attempting to locate a terminal, operated out of premises located on Bell's Lane in Jefferson County. About the middle of July 1949, suitable quarters were located near Clarksville, Indiana, and an office, garage and terminal were established there which have been used by them continuously since that time. Appellee's vehicles and equipment are registered and licensed in Indiana and it has paid all of the fees and excise taxes required by the State of Indiana. There is nothing in the record which indicates that the establishment of headquarters in Indiana was not done with good faith.

Appellant argues that in order to determine a carrier's principal place of business one should look to the carrier's operation and not to where the carrier may maintain its offices, keep its records, or house its equipment; insists that, since appellee must operate in strict compliance with the authority granted to it by the Interstate Commerce Commission, the starting point or point of origin, the loading dock, and terminal are the controlling factors; suggests that, since the granting of authority from the Interstate Commerce Commission designates Louisville as a point of origin, the principal place of appellee's business is thereby established in Louisville; and contends that appellee is not entitled to the benefits of the agreement between the Commonwealth of Kentucky and the State of Indiana.

This case does not involve the question of the residence or domicile of appellee company, and we are concerned only with the interpretation of the phrase, "owned by a person or corporation having his or its principal place of business in another state", as used in KRS 281.580.

The evidence adduced fully discloses that Coldway Carriers, Inc. had at Clarksville, Indiana, that concentration of executive power and central control which, when coupled with physical housing facilities for office workers and shop crews, would ordinarily warrant its designation as being the principal place of its business. We believe that the Legislature intended to define such a place when the words "principal place of business" were used in KRS 281.580, and did not mean the point of origin from which freight might be transported under the authority granted by the Interstate Commerce Commission.

Subsection 4 of KRS 446.080 provides: "All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have

acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning."

We believe that when the Legislature used the word "principal," it intended to designate the chief point of control for the general operation of the company and assigned to the word the common meaning. Commonwealth v. Cumberland Telephone & Telegraph Co., 108 S.W. 262, 32 Ky. Law Rep. 978. Under appellant's theory of this case, it might be held that appellee had a principal place of business at Atlanta, Georgia, because the authority issued by the Interstate Commerce Commission also fixes that city as another point of origin. We are of opinion that the Legislature intended to use the word "principal" in its ordinary and generally accepted meaning and that the operation at Clarksville, Indiana, is the location of the principal place of business of appellee.

Wherefore the judgment is affirmed.